UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLINICAL WOUND SOLUTIONS, LLC, ) ) ) Plaintiff, ) ) v. ) ) NORTHWOOD, INC., ) ) Defendant. ) | No. 18-cv-07916 Judge Martha M. Pacold |

## MEMORANDUM OPINION AND ORDER

Plaintiff Clinical Wound Solutions, LLC ("CWS") filed a complaint against defendant Northwood, Inc. ("Northwood") in the Circuit Court of DuPage County, alleging breach of contract, fraud, a claim under the Illinois Insurance Code, and a claim under the Michigan Third Party Administrator Act. (Dkt. 1.) Northwood removed the case to federal court and moves to dismiss the fraud, Illinois Insurance Code, and Michigan Third Party Administrator Act claims (Counts 2, 3, and 4, respectively) under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 9.) The court grants the motion without prejudice to CWS's filing an amended complaint by June 11, 2020.

## BACKGROUND

The complaint alleges as follows: The plaintiff, CWS, is a limited liability company that conducts business in Bensenville, Illinois, and is in the business of supplying medical supplies. (Compl., Dkt. 1, at 8 ¶¶ 1-2.)[1] The defendant, Northwood, is a Michigan corporation and is a "third-party administrator and vendor." (*Id*. at 8 ¶ 4.) Northwood entered into an agreement with Security Health Plan of Wisconsin, Inc. ("SHP") "to supply covered services to SHP members." (*Id*.) "CWS entered into a Participating Supplier Agreement [("PSA")] with Northwood to provide medical supplies to SHP members" *id*. at 9 ¶ 5 (attaching PSA)), in which CWS agreed to provide covered services to members that Northwood had referred or assigned to CWS (*id*. at 9 ¶ 6), and Northwood agreed (1) to negotiate contracts with plan sponsors and other groups to arrange for the provision of covered services by CWS to SHP members and (2) to pay CWS for the supplies provided (*id*. at 9 ¶¶ 7-8). CWS provided supplies to the covered members of SHP and gave Northwood

---

[1] Docket entries are cited as "Dkt. [docket number]." Page number citations refer to the ECF page number.

itemized statements of the supplies it had provided to the covered members. (*Id.* at 9 ¶ 9 (attaching summary statement).) CWS made a demand for payment, and Northwood failed to pay the balance due of $196,769.30. (*Id.* at 9 ¶¶ 10-12.)

CWS filed suit against Northwood to recover the balance due under the PSA. In Count 1, CWS alleges breach of contract (the PSA). (*Id.* at 8-10.) In Count 2, CWS alleges common law fraud. (*Id.* at 10-11.) CWS alleges in Count 3 that Northwood violated the Illinois Insurance Code, in particular, that Northwood's actions constituted improper claims practices under 215 ILCS 5/154.6 and were vexatious and unreasonable under 215 ILCS 5/155. (*Id.* at 11-12.) Finally, CWS alleges in Count 4 that Northwood breached its duties under the Michigan Third Party Administrator Act, Mich. Comp. Laws Ann. § 550.940. (*Id.* at 12-13.) Northwood now moves to dismiss Counts 2, 3, and 4. (Dkt. 9.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Claims alleging fraud must also satisfy the heightened pleading requirement of Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

## DISCUSSION

### I. Jurisdiction

This court has an independent obligation to ensure that it has subject matter jurisdiction. *Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc.*, 768 F.2d 189, 190 (7th Cir. 1985) ("Federal courts have an independent obligation to confine themselves to the jurisdiction that has been given them by the Constitution and by Congress . . . ."). "[T]he party seeking to invoke federal diversity jurisdiction . . .

2

bears the burden of demonstrating that the complete diversity and amount in controversy requirements were met at the time of removal." *Tylka v. Gerber Prod. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). To confirm subject matter jurisdiction, the court directed the parties to file a joint jurisdictional statement and a supplemental jurisdictional statement; the parties complied. (Dkts. 42, 50, 81, 82.)

The supplemental joint jurisdictional statement provides the following information, all as of the time of removal: The defendant, Northwood, Inc., was a corporation with both its place of incorporation and principal place of business in Michigan. Plaintiff, Clinical Wound Solutions, LLC, is an Illinois LLC whose members were domiciled in Illinois at the time of removal; each member of the LLC is an individual who was domiciled in Illinois at the time of removal. (Dkt. 82.)

Based on the supplemental joint jurisdictional statement, Northwood was a citizen of Michigan at the time of removal. *Moore v. Gen. Motors Pension Plans*, 91 F.3d 848, 850 (7th Cir. 1996) (*per curiam*) ("a corporation does not have a domicile; rather, its citizenship for diversity purposes is determined by its place of incorporation and its principal place of business"). And, based on the statement, CWS was a citizen of Illinois at the time of removal. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) ("For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members. . . . Consequently, an LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the complaint or notice of removal was filed, and, if those members have members, the citizenship of those members as well.") (citation omitted); *Hayes-Murphy v. Gonzalez*, No. 12-cv-05899, 2012 WL 6590500, at *4 (N.D. Ill. Dec. 18, 2012) ("An individual's domicile determines state citizenship for the purposes of diversity jurisdiction."). Thus, there was complete diversity of citizenship at the time of removal.

The amount in controversy requirement was also satisfied at the time of removal, based on the notice of removal. (Dkt. 1 at 2.) *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) (amount in controversy requirement satisfied unless it is "legally impossible" for a plaintiff to recover more than $75,000).

The court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Having confirmed subject matter jurisdiction, the court turns to the motion to dismiss.

## II. Common Law Fraud

Count 2 of the complaint alleges common law fraud. (Compl., Dkt. 1, at 10-11.) Northwood argues that the fraud claim should be dismissed because CWS did not plead the elements of fraud, repackaged its breach of contract claim as a fraud claim, and did not plead fraud with particularity.

3

The first question is which state's law applies to the fraud claim. Northwood states that Michigan law applies, based on a choice of law provision in the PSA. (Dkt. 9 at 2-3 & n.2.) But when "the district court's jurisdiction . . . rests on diversity of citizenship, the substantive law of the forum state, Illinois, controls the case, including the State's choice of law rules." *Twohy v. First Nat. Bank of Chicago*, 758 F.2d 1185, 1189 (7th Cir. 1985) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941), and other authority); *see also Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd*, 186 F. Supp. 3d 852, 861 (N.D. Ill. 2016). There is a question whether the choice of law provision in the PSA governs tort claims, such as fraud. *See Kessinger v. Grefco, Inc.*, 875 F.2d 153, 155 (7th Cir. 1989) ("while the choice of law provision may govern the interpretation of the contract, its legal effect and unrelated questions of tort law may nevertheless be governed by the law of the forum state, depending upon its choice of law rules"); *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 332-35 (2d Cir. 2005); *Naturalock Sols., LLC v. Baxter Healthcare Corp.*, No. 14-cv-10113, 2016 WL 5792377, at *4 (N.D. Ill. Oct. 4, 2016).

In any event, CWS does not contest Northwood's statement that Michigan law applies, and neither party argues that the choice between Illinois and Michigan law makes any substantive difference. (*See* Dkt. 9 at 3 n.2 (Northwood's brief, stating that "[w]hile Michigan provides the substantive law here, the elements mirror those of Illinois").) Given all these circumstances, the court applies Michigan law. *See Fid. & Deposit Co. of Maryland v. Krebs Engineers*, 859 F.2d 501, 504 (7th Cir. 1988); *Flextronics*, 186 F. Supp. 3d at 862.

The elements of common law fraud under Michigan law are:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Bennett v. MIS Corp.*, 607 F.3d 1076, 1100-01 (6th Cir. 2010) (quoting *Cummins v. Robinson Twp.*, 283 Mich. App. 677, 770 N.W.2d 421, 435 (2009)).

Northwood argues that CWS's fraud claim does not meet the heightened pleading standard of Rule 9(b). "Rule 9(b) requires heightened pleading of fraud claims in all civil cases brought in the federal courts, whether or not the applicable state or federal law requires a higher standard of proving fraud, which sometimes it does and sometimes it does not." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999). Rule 9(b) requires that the complaint "state the identity of the

4

person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (citations and internal quotation marks omitted). "By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014) (citation and internal quotation marks omitted). At the same time, "courts and litigants often erroneously take an overly rigid view of the formulation and . . . the precise details that must be included in a complaint may vary on the facts of a given case." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (citation and internal quotation marks omitted).

     CWS has not pled its fraud claim with the specificity required by Rule 9(b). The fraud allegations are brief, general, and conclusory. (*See, e.g.*, Dkt. 1 at 10 ¶ 13 ("Northwood represented to CWS that CWS would receive payment and approved each order to be sent to the covered members."); *id.* ¶14 ("Relying upon Northwood's approval and authorization, CWS provided the covered supplies."); *id.* ¶ 15 ("Northwood denied the claims without any basis and refused to pay CWS for these supplies without any basis."); *id.* ¶ 17 ("The actions of Northwood were deliberately intended to deprive CWS of the payments to which it was entitled absent Northwood's actions and therefore constitute malice in law. The willful actions of Northwood displayed a wanton disregard of CWS's right to receive payment.").)

     CWS's response to the motion to dismiss explains that its allegations are that, by issuing approvals and authorizations for almost $197,000 of supplies, Northwood deliberately induced CWS to provide the supplies, yet never intended to pay for them, as shown by the significant value of the supplies and by Northwood's denial of the claims without basis. (Dkt. 19 at 4-5.) But in the fraud allegations of the complaint, CWS provides no context for Northwood's issuance of approvals and authorizations or for Northwood's refusal to make payments and subsequent denial of the claims. In their current form, the fraud allegations lack sufficient factual details and context and are too vague to satisfy Rule 9(b). *See Webb v. Frawley*, 906 F.3d 569, 582 (7th Cir. 2018) ("Missing from the complaint is a sufficiently detailed and cohesive theory of the fraud."); *cf. Presser*, 836 F.3d at 780 ("Without additional context providing reason to question the appropriateness of these policies, the complaint does not present allegations of fraud with sufficient particularity."); *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 1000-01 (7th Cir. 2014) ("vague allegations that a corporation acted with reckless disregard—*i.e.*, grossly negligently or with reason to know of facts that would lead a reasonable person to realize that it was submitting false claims, . . . —simply by virtue of its size, sophistication, or reach do not clear even [the] lower pleading threshold" for malice,

intent and other conditions of a person's mind under Rule 9(b); "[s]uch allegations may suggest a possibility that Shopko acted with reckless disregard, but they do not nudge Thulin's claims across the line from conceivable to plausible") (citations, internal quotation marks, and brackets omitted).

Northwood also argues that CWS has not alleged the elements of fraud, in particular, "that Northwood knowingly made a false representation or that Northwood made a false representation so that Plaintiff would rely upon it, essential elements of any fraud claim." (Dkt. 9 at 4.) Northwood further argues that "Plaintiff's Count II simply repackages its breach of contract claim and labels it as fraud." (*Id.*)

Northwood has raised questions about whether Count 2 sufficiently alleges the elements of fraud under Michigan law. For example, there is a question whether Count 2 alleges an actionable misrepresentation or false statement under Michigan law. In the fraud claim, CWS alleges that "Northwood represented to CWS that CWS would receive payment and approved each order to be sent to the covered members" (Compl., Dkt. 1, at 10 ¶ 13), and that "[r]elying upon Northwood's approval and authorization, CWS provided the covered supplies" (*id.* at 10 ¶ 14). CWS explains in response to the motion to dismiss, "The fraud that is alleged is that, in reliance upon the Defendant's specific representations that Plaintiff would be paid and its approvals and authorizations of each order . . . , Plaintiff provided the requested medical supplies to the covered members." (Dkt. 19 at 4.)

It is unclear whether the fraud allegations sufficiently allege an actionable misrepresentation or false statement under Michigan law, based on the court's nonexhaustive research. *Cf., e.g.*, *Bennett*, 607 F.3d at 1101 ("an action for fraud must be predicated upon a false statement relating to a past or existing fact; promises regarding the future are contractual and do not support a claim for fraud") (citing *Hi–Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 247 N.W.2d 813, 815 (1976)); *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 785 (E.D. Mich. 2014) ("Michigan law does in fact require that actionable misrepresentations must relate to an existing or past fact; promises relating to future actions when unfulfilled do not constitute fraud") (citing *Hi–Way Motor Co.*, 247 N.W.2d at 815–16); *but cf. Scott v. Bank of Am., N.A.*, 682 F. App'x 417, 419 (6th Cir. 2017) (future promise may support a fraud claim if it is "made in bad faith without intention of performance") (quoting *Hi-Way Motor Co.*, 247 N.W.2d at 816).[2] But because the claim cannot proceed under Rule 9(b) as currently pleaded, and without briefing on

---

[2] In a case involving the Illinois Consumer Fraud and Deceptive Business Practices Act, the Seventh Circuit noted that "[w]hen allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 296 Ill. Dec. 448, 835 N.E.2d 801, 844 (2005)).

the relevant Michigan law, the court does not reach whether the fraud allegations sufficiently allege the elements of fraud under Michigan law.

Northwood also argues that the fraud claim repackages the breach of contract claim. The fraud allegations and the breach of contract allegations appear to bear some similarities. (*Compare, e.g.*, Compl., Dkt. 1, at 9 ¶ 8 (breach of contract claim alleges that "Northwood agreed to pay CWS for the supplies provided") *with id.* at 10 ¶¶ 13, 14 (fraud claim alleges that "Northwood represented to CWS that CWS would receive payment and approved each order to be sent to the covered members" and that "[r]elying upon Northwood's approval and authorization, CWS provided the covered supplies").) But because the claim cannot proceed under Rule 9(b) as currently pleaded, and without briefing on whether Michigan law permits CWS to pursue both breach of contract and fraud claims under the circumstances alleged, the court does not reach the question.

The court grants the motion to dismiss with respect to Count 2, without prejudice to repleading.

### III.   Illinois Insurance Code

In Count 3, CWS alleges that Northwood committed improper claims practices under Section 154.6 of the Illinois Insurance Code, 215 Ill. Comp. Stat. Ann. 5/154.6, and acted vexatiously and unreasonably under Section 155 of the Code, 215 Ill. Comp. Stat. Ann. 5/155. (Compl., Dkt. 1, at 11-12.) Northwood argues that this claim should be dismissed because these provisions of the Insurance Code "apply to insurance claims, not a general claim for payment at large"; "Plaintiff is not a policyholder and has nothing more than a contractual relationship with Northwood"; and plaintiff cannot "mislabel a breach of contract claim as an insurance claim." (Dkt. 9 at 5.)

Section 154.6 provides, "Any of the following acts by a company, if committed without just cause and in violation of Section 154.5, constitutes an improper claims practice," and then lists a number of acts, such as "(h) Refusing to pay claims without conducting a reasonable investigation based on all available information." 215 Ill. Comp. Stat. Ann. 5/154.6.

Section 155 provides in relevant part:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in

> the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts: . . . .

215 Ill. Comp. Stat. Ann. 5/155(1).

"As described by the Supreme Court of Illinois, section 155 provides an 'an extracontractual remedy to *policy-holders* whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable.'" *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013) (quoting *Cramer v. Ins. Exch. Agency*, 174 Ill.2d 513, 221 Ill.Dec. 473, 675 N.E.2d 897, 900 (1996)) (emphasis added).

As to Section 154.6:

> Section 154.6 identifies several acts that could constitute improper claims practices by an insurer, provided that one or more of the acts were committed knowingly and without just cause, and with a frequency indicating a persistent propensity to engage in that type of conduct. 215 ILCS 5/154.5, 154.6 (West 2010). Section 154.6 is a regulatory provision that comes within the purview of the State Director of Insurance. 215 ILCS 5/154.7, 154.8 (West 2010). It does not provide a policyholder with a private remedy or cause of action for an insurer's improper claims practice. . . . That said, after careful consideration of the acts described in section 154.6, we find that some of the acts are illustrative of conduct by an insurer that may give rise to a remedy for vexatious or unreasonable conduct under section 155. Accordingly, we conclude that when determining whether an insurer's conduct in a given case is vexatious and unreasonable under the totality of the circumstances, a court may properly consider actions identified as improper claims practices under section 154.6 as relevant to, but not dispositive of, a section 155 claim.

*Zagorski v. Allstate Ins. Co.*, 2016 IL App (5th) 140056, ¶ 26, 54 N.E.3d 296, 304–05 (citation omitted).

In CWS's response to the motion to dismiss, CWS does not directly contest that Section 155 involves insurance claims—as Section 155 puts it, "any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim." CWS appears to contend that Northwood subcontracted to CWS the fulfilment of insured individuals' insurance claims, that CWS provides medical supplies to insured individuals in fulfilment of those claims, and that there may be some connection between Northwood's refusal to pay CWS for the supplies and Northwood's denial of the insured individuals' insurance

8

claims. (Dkt. 19 at 5-7.) In support, CWS cites the "Subcontractor Affiliation Acknowledgement to Northwood, Inc.'s Security Health Plan of Wisconsin, Inc. Vendor Affiliation Agreement," which is attached to the complaint. (Dkt. 19 at 6-7; Dkt. 1 at 31.)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555 (citations, internal quotation marks, and brackets omitted). Simply repeating the statutory language is not sufficient to state a Section 155 claim. *See, e.g.*, *Uptown Serv. Station, Inc. v. Arch Ins. Co.*, No. 18-cv-00175, 2018 WL 3417012, at *2 (N.D. Ill. July 13, 2018) ("A complaint will not survive a Rule 12(b)(6) motion . . . when it 'merely recite[s] the acts that constitute improper claims practice' under the Illinois Insurance and Administrative Codes without more.") (quoting *70th Court Indus. Condo. #2 v. Travelers Cas. Ins. Co. of Am.*, No. 16-cv-06483, 2017 WL 1386179, at *2 (N.D. Ill. Apr. 18, 2017)); *9557, LLC & River W. Meeting Assocs., Inc. v. Travelers Indem. Co. of Conn.*, No. 15-cv-10822, 2016 WL 464276, at *4 (N.D. Ill. Feb. 8, 2016) (allegations "amount[ed] to little more than simple recitations of the various codes [plaintiff] alleges Travelers violated"); *Scottsdale Ins. Co. v. City of Waukegan*, No. 07-cv-00064, 2007 WL 2740521, at *2 (N.D. Ill. Sept. 10, 2007) ("Simply pleading that Scottsdale knowingly and intentionally refused to provide insurance coverage and that Scottsdale's refusal 'was and continues to be vexatious and unreasonable,' without some modicum of factual support, is insufficient to plausibly suggest that Waukegan is entitled to relief under the statute.").

Count 3 does not meet this standard. Count 3 consists largely of legal conclusions tracking the statutory language from both Section 154.6's list of acts that could constitute improper claims practices and Section 155. For instance, CWS alleges that Northwood "failed to attempt in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." (Compl., Dkt. 1, at 11 ¶ 17(d).) This allegation mirrors Section 154.6(d) ("[n]ot attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear"). Similarly, CWS alleges without elaboration that "[t]he actions of Northwood were and are unreasonable and vexatious within the meaning of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155." (Compl., Dkt. 1, at 11-12 ¶ 20.) Count 3 does contain a paragraph realleging the prior paragraphs of the complaint, but those paragraphs do not bring the Section 155 claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

There is also a question whether the allegations state a claim under Section 155 and relevant cases. *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins.*

9

*Co.*, 126 F.3d 886 (7th Cir. 1997), which CWS cites, construed the relevant policy to cover the plaintiff as a "Named Insured." *Id.* at 892; *see also id.* at 894 (under Illinois cases, Section 155 is "generally applicable to third-party as well as first-party insurance"). CWS does not appear to allege that CWS itself is insured under the relevant insurance policy or policies. But the court need not decide whether a Section 155 claim requires such an allegation, as the claim cannot proceed in its current form for the different reason above.

The court grants the motion to dismiss with respect to Count 3, without prejudice to repleading.

### IV.     Michigan Third Party Administrator Act

Count 4 alleges that Northwood breached its duties under the Michigan Third Party Administrator Act, Mich. Comp. Laws Ann. § 550.940. (Compl., Dkt. 1, at 12-13.) Northwood argues that Count 4 fails for the same reasons as Count 3—that the Act applies to "the processing of *insurance* claims – not a 'claim' for payment due under a contractual relationship"—and that in any case, the Act does not provide for a private right of action. (Dkt. 9 at 5-6 (emphasis in original).) The court need not decide these issues. Like Count 3, Count 4 realleges prior paragraphs of the complaint and then simply recites provisions of the statute. *Compare* Compl., Dkt. 1, at 12 ¶ 17(a)-(c), *with* § 550.940(b), (d), and (f). As with Count 3, simply repeating the statutory language is not sufficient. *Twombly*, 550 U.S. at 555, 570.

The court grants the motion to dismiss with respect to Count 4, without prejudice to repleading.

### CONCLUSION

The motion to dismiss Counts 2, 3, and 4 (Dkt. 9) is granted without prejudice to CWS's filing an amended complaint by June 11, 2020.

Date: April 30, 2020                                                  /s/ Martha M. Pacold